UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILLIAM LYNN RYAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1266** |
| **DEPUTY CHRISTOPHER PHILIPS, DEPUTY JOSEPH STRAIN, MAJOR GREGORY LONGINO** | **SECTION "F"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On June 14, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 9. The plaintiff was sworn in prior to testifying. The hearing was digitally recorded.

I. **Factual Background**

   A. **The Complaint**

The plaintiff, William Lynn Ryan ("Ryan") is an inmate housed in the St. Tammany Parish Jail ("STPJ"). Ryan filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Major Gregory Longino as the Warden of STPJ, Deputy Christopher Phillips, and Deputy Joseph Strain complaining, without any detail, that he was knocked unconscious and suffered a gash on his left eye, a bruise on his right arm, and broken or fractured ribs.

   B. **The *Spears* Hearing**

Because of the lack of information in the *pro se* complaint, the Court conducted the *Spears* Hearing. Ryan testified that he is presently incarcerated after his probation was revoked, and he has 18 months remaining on his sentence. In April of 2012, he was housed in a medical holding cell. He was brought into an office to speak with Dr. Inglese about a grievance he filed. Specifically, he complained that during a shakedown, his newly purchased antibiotic medication, along with his blood pressure medication, Tylenol, Paxil, and Flexeril, was destroyed or discarded by the prison guards. He stated that he had just received a double dose of his medications to cover him for the weekend. He complained that the guards either threw them away or tossed them to the floor for the trustee to sweep up as trash.

Ryan indicated that shortly thereafter, he asked for his medication during a medication pass-out. He was offered the antibiotic and the blood pressure medicine, but he was not given the Tylenol, Paxil, or Flexeril he had also been taking. He refused all of the medication since it was not a complete order. That is when he filed the grievance complaint.

When speaking with Dr. Inglese about the complaint, he became loud and angry and even cursed. The doctor and the guards told him to settle down, but he again got loud. Ryan stated that he was upset, because he did not lose his medicine and should not have been denied the rest of his medication. At some point, Deputy Phillips reached for his handcuffs. Ryan claims that he held out his hands, knowing that Phillips meant to cuff him, as he continued to argue with Dr. Inglese.

At that time, he claims that Deputy Phillips grabbed the center of the cuffs, pulled him up from the chair, and slammed him face first into the wall. Ryan testified that he believes that he was rendered unconconscious and woke up sometime later in another room with five or six officers around him or on top of him on the floor. He claims that he was face down on the floor with his hands still cuffed in front. The officers, including Deputy Strain, were pulling on his arms trying to get his hands free to cuff him in the back. Ryan indicated that he did know who was holding him, but the incident report indicated that Deputy Strain was among them. He tried to tell them that his hands were still cuffed in front, but they continued to pull on his arms. They eventually freed his arms to the side, and recuffed him in the back. They then escorted him to a waiting area where he was seated on a bench.

Ryan claims that he suffered a gash or cut on his left eye, a golf ball sized knot on his left temple, and bruises to his arms and ribs. He claims that his ribs may have been broken or fractured but he never sought medical care. He stated that he refused medical attention at that time and still refuses to return for any medical assistance at the jail.

In spite of this, he later testified that Warden Longino saw him seated at the bench and told him he would see that he got medical care. He also indicated that a nurse came out to see him, and

3

she instructed him to complete a sick call form so he could be examined. Ryan did not believe he should have to do that, so he did not.

Ryan also indicated that he filed another grievance about the use of force. He stated that, on the morning after the incident, another deputy asked him what happened. He told the deputy that he planned to file the grievance against Phillips, and several hours later, he received a disciplinary write up for his actions in Dr. Inglese's office. He was taken to a disciplinary hearing where he entered a plea of innocent and told the board that he was pursuing a grievance. He was told that the matter would be referred to the Louisiana Department of Corrections. He has not heard back about the disciplinary charge.

Ryan indicated that he also filed a grievance about receiving the disciplinary write up. He sent it to Warden Longino's office and it was forwarded to the medical unit. He was called to medical and did not like the response; he signed for an appeal. Ryan indicated that he received unsatisfactory responses to all of his grievances.

Ryan stated that he is suing Deputy Phillips for the injuries he received when he was slammed into the wall of Dr. Inglese's office. He is suing Deputy Strain, because his name was on the report for holding him on the floor of the other room. He also sued Warden Longino because he is responsible for the actions of his deputies.

As relief, Ryan stated that he is still suffering physically with rib-area pain and apparently seeks compensation for his injuries.

## II. **Standards of a Frivolousness Review**

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are

frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. <u>Claims Against Warden Longino</u>

Ryan has named Warden Longino as a defendant in his role as supervisory official over the deputies at STPJ. Ryan concedes that Warden Longino was not involved in the incident of which he complains. He further acknowledged that, when Warden Longino saw him, he acted appropriately by sending medical personnel to see him.

As a supervisory official over the jail, Warden Longino would not be vicariously liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or

subordinate at the jail allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). He only would be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Ryan does not allege that Warden Longino was involved in the complained of incident.

Ryan, therefore, has not demonstrated a personal connection or action that would render Warden Longino liable under § 1983. His claims against the Warden are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Ryan's § 1983 claims against Warden Longino be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

Ryan's § 1983 excessive force claims against Deputies Phillips and Strain should remain automatically referred to the undersigned Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 20th day of July, 2012.

                              **KAREN WELLS ROBY**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[3]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.