UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WILLIAM LYNN RYAN | CIVIL ACTION |
| VERSUS | NO. 12-1266 |
| DEPUTY PHILIPS, DEP. STRAIN, WARDEN | UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY |

## ORDER AND REASONS

This matter is before the Court on consent of the parties pursuant to 28 U.S.C. § 636(c).[1] Before the Court is a **Motion for Summary Judgment (Rec. Doc. No. 40)** filed by the defendants, Deputy Christopher Phillips and Deputy Joseph Strain, seeking dismissal of the complaint filed by the plaintiff William Lee Ryan. The defendants have also filed a **Motion to Compel Plaintiff to Respond to Interrogatories and Requests for Production (Rec. Doc. No. 31)** seeking an order to compel plaintiff to respond to discovery posed on November 8, 2012. The plaintiff has filed a **Motion for Summary Judgment (Rec. Doc. No. 43)** in which he argues under a broad reading that the facts will establish his entitlement to recovery. Ryan also filed a **Motion for Evidence and Subpoenas (Rec. Doc. No. 39)** seeking the assistance of the Court in obtaining evidence and witnesses for trial. Upon review of the entire record, the Court has determined that the motions and this matter can be disposed of without an evidentiary hearing.

---

[1] Rec. Doc. No. 20.

I. **Factual Background**

A. **The Complaint**

The plaintiff, William Lynn Ryan ("Ryan") is an inmate housed in the St. Tammany Parish Jail ("STPJ"). Ryan filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Major Gregory Longino as the Warden of STPJ, Deputy Christopher Phillips, and Deputy Joseph Strain complaining, without any detail, that he was knocked unconscious and suffered a gash on his left eye, a bruise on his right arm, and broken or fractured ribs.[2]

B. **The *Spears* Hearing**

Because of the lack of information in the *pro se* complaint, on June 14, 2012, the Court conducted a hearing pursuant to *Spears v. McCotter*,[3] and its progeny, with the plaintiff participating by conference telephone call.[4] Ryan testified that he is presently incarcerated after his probation was revoked, and he has 18 months remaining on his sentence. In April of 2012, he was housed in a medical holding cell. He was brought into an office to speak with Dr. Inglese about a grievance he filed. Specifically, he complained that during a shakedown, his newly purchased antibiotic medication, along with his blood pressure medication, Tylenol, Paxil, and Flexeril, were destroyed or discarded by the prison guards. He stated that he had just received a double dose of his medications to cover him for the weekend. He complained that the guards either threw them away or tossed them to the floor for the trustee to sweep up as trash.

---

[2]The claims against Warden Longino were dismissed with prejudice by the Court on August 15, 2012. Rec. Doc. Nos. 14, 15.

[3]766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[4]Rec. Doc. No. 9. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

Ryan indicated that shortly thereafter, he asked for his medication during a medication pass-out. He was offered the antibiotic and the blood pressure medicine, but he was not given the Tylenol, Paxil, or Flexeril he had also been taking. He refused all of the medication since it was not a complete order. That is when he filed the grievance complaint.

When speaking with Dr. Inglese about the complaint, he became loud and angry and even cursed. The doctor and the guards told him to settle down, but he again got loud. Ryan stated that he was upset, because he did not lose his medicine and should not have been denied the rest of his medication. At some point, Deputy Phillips reached for his handcuffs. Ryan claims that he held out his hands, knowing that Phillips meant to cuff him, as he continued to argue with Dr. Inglese.

At that time, he claims that Deputy Phillips grabbed the center of the cuffs, pulled him up from the chair, and slammed him face first into the wall. Ryan testified that he believes that he was rendered unconscious and woke up sometime later in another room with five or six officers around him or on top of him on the floor. He claims that he was face down on the floor with his hands still cuffed in front. The officers, including Deputy Strain, were pulling on his arms trying to get his hands free to cuff him in the back. Ryan indicated that he did know who was holding him, but the incident report indicated that Deputy Strain was among them. He tried to tell them that his hands were still cuffed in front, but they continued to pull on his arms. They eventually freed his arms to the side, and re-cuffed him in the back. They then escorted him to a waiting area where he was seated on a bench.

Ryan claims that he suffered a gash or cut on his left eye, a golf ball sized knot on his left temple, and bruises to his arms and ribs. He claims that his ribs may have been broken or fractured

but he never sought medical care. He stated that he refused medical attention at that time and still refuses to return for any medical assistance at the jail.

In spite of this, he later testified that Warden Longino saw him seated at the bench and told him he would see that he got medical care. He also indicated that a nurse came out to see him, and she instructed him to complete a sick call form so he could be examined. Ryan did not believe he should have to do that, so he did not.

Ryan also indicated that he filed another grievance about the use of force. He stated that, on the morning after the incident, another deputy asked him what happened. He told the deputy that he planned to file the grievance against Phillips, and several hours later, he received a disciplinary write up for his actions in Dr. Inglese's office. He was taken to a disciplinary hearing where he entered a plea of innocent and told the board that he was pursuing a grievance. He was told that the matter would be referred to the Louisiana Department of Corrections. He has not heard back about the disciplinary charge.

Ryan indicated that he also filed a grievance about receiving the disciplinary write up. He sent it to Warden Longino's office and it was forwarded to the medical unit. He was called to medical and did not like the response; he signed for an appeal. Ryan indicated that he received unsatisfactory responses to all of his grievances.

Ryan stated that he is suing Deputy Phillips for the injuries he received when he was slammed into the wall of Dr. Inglese's office. He is suing Deputy Strain, because his name was on the report for holding him on the floor of the other room. He also sued Warden Longino because he is responsible for the actions of his deputies. As relief, Ryan stated that he is still suffering physically with rib-area pain and apparently seeks compensation for his injuries.

**II.     Standards of Review of a Motion for Summary Judgment under Fed. R. Civ. P. 56**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 233 & n.9 (5th Cir. 2012) (quoting *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Lindquist*, 669 F.3d at 233 & n.11 (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 248; *Lindquist*, 669 F.3d at 233 & n.12 (quoting *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429-30 (5th Cir. 2009)).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party . . . carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant[ ] . . . to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994); *Provident Life & Accident Insurance Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Industrial Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324 (quoting Rule 56(c)). If "the record - taken as a whole - could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

### III. Defendants' Motion for Summary Judgment

#### A. Timeliness of the Motion

Following the scheduling conference held October 1, 2012, the Court issued an order setting the pretrial deadlines and trial date.[5] The Court ordered that all pretrial motions "be filed in sufficient time to be heard by the Court on or before **March 13, 2013**." (emphasis in original). The Court also ordered that any motion not timely filed would be "deemed waived unless good cause is shown."

In their summary judgment motion, the defendants acknowledge the motion deadline set by the Court and concede that their Motion for Summary Judgment was not filed until March 11, 2013, causing it to be set for submission on March 27, 2013.[6] The defendants contend, however, that there was good cause for the delayed filing of the motion.

---

[5] Rec. Doc. No. 18.

[6] Rec. Doc. No. 40, pp. 2-3.

6

Specifically, the defendants site to the plaintiff's failure or refusal to respond to their discovery requests which required them to file a motion to compel him to do so. Unable to pursue effective discovery, the defendants were willing to acquiesce to a continuance of the trial in this matter to allow for discovery upon resolution of the motion to compel. The defendants thereafter filed the motion for summary judgment in case trial was to proceed as scheduled.

Under Fed. R. Civ. P. 16(b)(4), the Court can modify its scheduling order when good cause is shown. "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S&W Enterprises, LLC v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (*quoting* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)); *Iturralde v. Shaw Group, Inc.*, No. 2013 WL 599864, at *1 (5th Cir. Feb. 18, 2013) (applying the same standard to dispositive filed after scheduling order deadline); *Argo v. Woods*, 399 F. App'x 1, 2 (5th Cir. Sep. 10. 2010) (same). In this case, the defendants did not seek leave to file an untimely motion. Instead, they included the argument within the motion that good cause existed for their delay.

The defendants have based the motion for summary judgment in main part on Ryan's failure to exhaust administrative remedies. This is an affirmative defense which was first raised by the defendants in their answer filed July 3, 2012.[7] The defendants support the exhaustion defense in the motion with exhibits and evidence obtained from the prison records, including the affidavit of the previously dismissed defendant, Warden Longino. It is incongruous for the defendants to now

---

[7]Rec. Doc. No. 11.

suggest that Ryan's failure to reply to discovery in November of 2012 was any cause for their delay in filing a motion based on the failure to exhaust defense that did not require information from him.

Nevertheless, the United States Supreme Court has decreed that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). In its recent precedent, the United States Fifth Circuit has made clear that it is <u>mandatory</u> for an inmate to complete the prison grievance process <u>prior</u> to filing a federal petition. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Thus, notwithstanding the untimeliness of the defendants' motion, this Court would have to address the affirmative defense before the case could be brought to the jury.

In reaching a decision to consider the untimely motion, the Court relies on the following factors. A meritorious failure to exhaust defense would necessarily eliminate the need for a trial and curtail the unnecessary and further waste of judicial resources. In addition, Ryan has filed an opposition response to the motion which will allow the Court to consider both sides before resolving the motion. Furthermore, the Court is faced with the inevitable need to resolve the exhaustion issue before trial. For these reasons of good cause, the Court *nunc pro tunc* extends the motion deadline to allow for filing and consideration of the defendants' motion for summary judgment.

### B. **Defendants' Arguments In Support**

The defendants have filed a motion seeking summary dismissal of Ryan's urging that he has failed to exhaust administrative remedies, they are entitled to qualified immunity, and that his claims are insufficient to establish excessive force. The defendants represent that the St. Tammany Parish Jail has a posted administrative grievance process which Ryan failed to initiate or complete. As will be discussed, the exhaustion requirement is a prerequisite to filing suit in this federal court. Because

the motion has merit, the Court will address the motion under that defense without need to address the remaining arguments.

In support of the motion, the defendants provide the affidavit of Warden Longino and copies of the posted complaint and grievance policies, along with copies of the related forms.[8] The defendants argue that Ryan did not initiate the process or complete the process as required before filing the instant complaint. As such, his complaint must be dismissed for failure to exhaust pursuant to 28 U.S.C. § 1997e(a).

### C.     Ryan's Argument in Opposition

Ryan filed an opposition to the defendants' motion arguing that he disagrees with the facts presented by the defendants. He focuses his opposition on the merits of the excessive force and denial of medical care claims intertwined therein. Ryan does not address the defendants' assertion that he failed to exhaust administrative remedies as to the claims raised herein. Instead, under the broadest possible reading, he states only that the altercation of which he complains was in response to his verbal complaints made to Dr. Inglese about his medical care.

### D.     The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") as codified at 42 U.S.C. § 1997e(a) requires that prisoners must properly exhaust "such administrative remedies as are available" prior to filing a § 1983 complaint related to prison conditions.[9] *Woodford*, 548 U.S. at 83-84. Specifically, § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[8] Rec. Doc. No. 40-4, pp. 1-9.

[9] The State of Louisiana has a similar requirement before suit can be filed in the state courts. La. Rev. Stat. Ann. § 15:1184(A)(2).

9

remedies as are available are exhausted." *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds by Jones v. Bock*, 549 U.S. 199, 214-15 (2007). The exhaustion requirement and the phrase "prison conditions" apply to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA is an affirmative defense and is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *see also*, *Jones v. Brock*, 549 U.S. 199, 216 (2007) (concluding that exhaustion under the PLRA is an affirmative defense). As a result, the trial court may resolve factual disputes concerning exhaustion without the participation of a jury. *Id*.

The court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." (citations and internal quotation marks omitted) *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003). The Supreme Court has held that the exhaustion requirement mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Woodford*, 548 U.S. at 92-93. Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his "grievance remedy to conclusion," he has not exhausted "available remedies." *Id*.

Thus, exhaustion does not merely require the plaintiff to initiate the prescribed administrative procedures, but also to pursue them to their appropriate conclusion and await their final outcome before seeking judicial intervention. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004);

*Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). The United States Fifth Circuit has made clear the Supreme Court's position that it is mandatory that an inmate complete the prison grievance process prior to filing a federal petition. *Gonzalez*, 702 F.3d at 788. In addition, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright*, 260 F.3d at 358.

**E.     Discussion**

According the defendants' supporting documentation, the STPJ administrative remedy procedure ("ARP") was implemented in 1996 and in place in April of 2012 when the events forming the basis of Ryan's complaint occurred.[10] The procedure is posted in every housing unit, with a summary of the process appearing in the Inmate Handbook and a complete version available to the inmates in the law library. Inmates can obtain the blank grievance forms in each housing unit or they can be obtained from any deputy. The process also allows inmates to use any written communication as a grievance by using the words "This is a grievance through the ARP."

According to the attached policy statements, the inmates are required to resolve their problems before using the ARP by speaking with the shift supervisor on the tier.[11] If the complaint is not resolved, the inmate must then file a written complaint with the Captain of Operations ("CO"). The process is for the inmate to complete a complaint form and give the form to the mail deputy. The mail deputy is to deliver the complaint to the CO's administrative assistant to be recorded. The CO reviews the complaint and forwards it to the appropriate supervisor to be answered within five days. If the complaint is not resolved, the inmate then proceeds to the ARP procedure.

---

[10] Rec. Doc. No. 40-4, pp. 1-9.

[11] Rec. Doc. No. 40-4, p. 4.

The formal ARP procedure gives the inmate 90 days from the date of the incident to initiate the process by submitting a grievance form or its equivalent. The grievance form is given to the mail deputy for presentation to the Deputy Warden's office. A first step screening officer is appointed to reply within 15 working days. The inmate grievance form instructs the inmate as follows: "If you do not hear from the 'First Respondent' within 20 days you may file a Request for a Warden's Review within the following 5 days."[12] On the other hand, if an unsatisfactory response is received, the second step is for the inmate to appeal to the Warden within five days after receiving the first response. The Warden is expected to reply within 25 working days. If still unsatisfied, as the final step, the inmate can appeal to the Sheriff within five days of receipt of the Warden's response. The Sheriff is to respond within 40 working days.

The defendants contend that Ryan failed to initiate or pursue any part of the grievance process outlined above. They submit that the only document in his administrative file is the Jail Detention Bench/Lockdown Sheet placed there by the prison officials indicating that he received a six hour "bench lockdown" as punishment for an aggravated disobedience charge arising from the activities on April 11, 2012.[13]

As noted above, Ryan filed an opposition to the motion, however, he has not presented any competent summary judgment evidence to refute the defendants' arguments. Even broadly considering his pleadings, Ryan does not challenge any aspect of the posted grievance policy or its availability to him. His opposition is instead a substantive one in which he indicates only that his

---

[12]Warden Longino's affidavit attests that, "if an inmate does not receive a timely response to either of the first two steps of the process, the inmate nevertheless is required to follow through to the next step of the process." Rec. Doc. No. 40-4, p. 3 ¶14. Neither the process summary nor the form exhibits indicate that this is a requirement at the second step.

[13]Rec. Doc. No. 40-4, p. 3 ¶16; Rec. Doc. No. 40-5.

12

verbal altercation with and complaints to Dr. Inglese about his medical care led to the events of which he now complains. He does not suggest or indicate that he attempted either the informal or formal ARP processes at the jail before filing this suit. He offers no reason, excuse or other consideration for his failure to engage in the required administrative process. Ryan does not allege and the record does not suggest that the process was unavailable to him or that he was deprived of the ability to utilize the process.[14]

Thus, the uncontested facts confirm that Ryan has failed to exhaust available administrative remedies at STPJ before filing his complaint. The exhaustion requirement under § 1997e is mandatory and must be fully completed prior to the filing of a § 1983 complaint in a federal court. *Gonzalez*, 702 F.3d at 788. Ryan has failed to do so. The defendants, therefore, are entitled to dismissal of Ryan's complaint as a matter of law. Ryan's claims will be dismissed without prejudice for his failure to exhaust under 42 U.S.C. § 1997e(a) and with prejudice for purposes of his ability to pursue the claims as a pauper under 28 U.S.C. § 1915(d). *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998); *Wiley v. McKellar*, 167 F. App'x 385, 386-87 (5th Cir. 2006).

## IV.    Other Pending Motions

As outlined above, there are three additional motions pending before the Court: (1) the defendants' **Motion to Compel Plaintiff to Respond to Interrogatories and Requests for Production (Rec. Doc. No. 31)** seeking an order to compel plaintiff to respond to discovery posed on November 8, 2012; (2) the plaintiff's untimely filed **Motion for Summary Judgment (Rec. Doc.**

---

[14]For example, a prison's administrative grievance process is not available for exhaustion purposes when prison officials have ignored or interfered with a prisoner's pursuit of the administrative remedy. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (citing *Holloway v. Gunnell*, 685 F.2d 150, 154 (5th Cir. 1982)); *Thomas v. Prator*, 172 F. App'x 602, 603 (5th Cir. 2006) (citing *Holloway*). This long-standing exception to the exhaustion requirement was not addressed or abrogated by the *Gonzalez* court and is mentioned here as further indication that Ryan has provided no excuse for his failure to exhaust.

**No. 43)** in which he argues under a broad reading that he is entitled to recovery; and (3) the plaintiff's **Motion for Evidence and Subpoenas (Rec. Doc. No. 39)** seeking the assistance of the Court in obtaining evidence and witnesses for trial. The motions are technically moot in light of the Court's ruling on the defendants' summary judgment motion. However, for clarity, the Court provides the following reasons for denial of the motions.

In the motion to compel, the defendants sought to compel plaintiff's responses to interrogatories and requests for production submitted under Fed. R. Civ. P. 26(b)(1). The rules provide that the party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [ (3)(B)(iii) and (iv)] empowers the court to compel the production of documents ... upon motion by the party seeking discovery."). This Court, however, was not provided with any of the discovery requests or even advised generally as to what was sought from the plaintiff in discover.

Local Rule 7.4 states that "[i]f the motion requires consideration of facts not in the record, the movant must also file and serve upon opposing counsel a copy of all evidence supporting the motion." The defendants did not attach a copy of the proposed discovery. The Court has nothing to review for relevancy or appropriateness under the rules of discovery. The Court can not determine whether the responses or documents sought would be available to the defendants from another source, perhaps the prison records themselves. The defendants' motion is therefore in contravention of Local Rule 7.4 and is denied for that reason. Neither the defendants nor the plaintiff would be entitled to sanctions or costs based on the filing of the motion.

The plaintiff's motion for summary, like that of the defendants, was not timely filed in accordance with the Court's scheduling order. Ryan submitted the motion for filing with the Court on March 15, 2013.[15] He has not offered any excuse or good cause for his failure to comply with the scheduling order and not is found in the record. Furthermore, his failure to exhaust administrative remedies before the complaint prevents review of his claims.

The dismissal of the complaint and claims against the remaining defendants for failure to exhaust also renders moot any need for trial or to have evidence and witnesses subpoenaed for trial. Ryan motion for subpoenas is therefore moot. Accordingly,

**IT IS ORDERED** that the defendants' **Motion for Summary Judgment (Rec. Doc. No. 40)** is **GRANTED** and Ryan's claims are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) and **WITH PREJUDICE** to his ability to pursue the claims as a pauper under 28 U.S.C. § 1915(d).

**IT IS FURTHER ORDERED** that the defendants' **Motion to Compel Plaintiff to Respond to Interrogatories and Requests for Production (Rec. Doc. No. 31)**, the plaintiff's **Motion for Summary Judgment (Rec. Doc. No. 43)**, and the plaintiff's **Motion for Evidence and Subpoenas (Rec. Doc. No. 39)** are **DENIED**.

New Orleans, Louisiana, this   11th   day of April, 2013.

*[signature]*
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[15]This is the date it was signed by Ryan, which is the earliest date appearing in the record on which he could have given it to prison officials for mailing to the Court. *Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir.1995). The clerk of court actually filed the motion on March 25, 2013 when it was received. Rec. Doc. No. 43.